**Seth H. Row**, OSB No. 021845
seth.row@millernash.com
**Eric R. Mills**, OSB No. 194224
eric.mills@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

**John W. McGuinness**, CA Bar No. 277322
(Admitted *Pro Hac Vice*)
jmcguinness@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Ste 1700
Los Angeles, CA  90067
Telephone:  310.312.4270
Facsimile:  310.996.7030

      Attorneys for Defendant Newegg Inc.


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **BRITTAINY SHAW**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>*v.*<br><br>**NEWEGG, INC.**,<br><br>      Defendant. | CASE NO. 3:21-CV-01128-IM<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY AND/OR DISMISS**<br><br><br>**ORAL ARGUMENT REQUESTED** |

## LR 7-1 CERTIFICATION

Counsel for Defendant Newegg Inc. ("Defendant" or "Newegg") made a good faith effort to meet and confer telephonically with counsel for Plaintiff Brittainy Shaw ("Plaintiff") on and including October 5, 2021, October 6, 2021, and October 7, 2021.  Counsel for Plaintiff was unavailable for telephonic conference on those dates and advised that his soonest availability is October 8, 2021—the day after Defendant's responsive pleading deadline.  Nevertheless, counsel have exchanged substantively by electronic means as to the grounds for Defendant's motion and supporting documentation, and Plaintiff has confirmed opposition to the same.

## MOTION

Defendant Newegg Inc. ("Newegg") respectfully moves this Court for an order (1) compelling arbitration of all claims alleged in Plaintiff's Complaint (Dkt. 1) on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and (2) dismissing, or alternatively staying, this entire action in favor of arbitration. Newegg also respectfully moves this Court for an order staying all discovery and initial case scheduling deadlines pending resolution of this Motion.

Newegg makes this Motion on the grounds that Plaintiff Brittainy Shaw ("Plaintiff") and Newegg entered into a valid and binding agreement to arbitrate "any disputes," including those alleged in the Complaint in the instant case, and Plaintiff unequivocally waived the right to bring a putative class action. In other words, Plaintiff agreed to arbitrate these claims against Newegg strictly on an individual basis. Moreover, the parties delegated any disputes regarding the enforceability and scope of that agreement to the arbitrator. The Court is empowered to dismiss this entire case in favor of arbitration where, as here, all the claims are subject to arbitration. The Court may also stay all case deadlines while it considers this Motion.

This Motion is supported by the records and files herein, the following Memorandum of Points and Authorities, the declarations and exhibits submitted herewith, those matters of which

the Court may properly take judicial notice, and such argument and other evidence that may be presented prior to and which the Court may consider at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     <u>INTRODUCTION</u>

Plaintiff Brittainy Shaw ("Plaintiff") expressly agreed to arbitrate "any dispute" with Defendant Newegg Inc. ("Newegg") only on an individual basis, when she created a Newegg account and agreed to Newegg's terms and conditions (the "Terms"). Indeed, the Terms contain a clear and conspicuous mandatory dispute resolution provision that broadly requires Plaintiff's claims to be arbitrated in accordance with the rules of the Judicial Arbitration and Mediation Services ("JAMS") and to be administered by JAMS—*i.e.*, ***not litigated in this Court or any other court***. Further, Plaintiff's putative class claims are prohibited by the foregoing Terms, pursuant to which Plaintiff expressly waived any right she may have to bring or participate in a class action lawsuit against Newegg. Moreover, while Plaintiff may contend—incorrectly—that her claims are outside the ambit of the arbitration provisions, Plaintiff expressly delegated that issue to the arbitrator.

In violation of the parties' agreement to arbitrate all of their disputes, Plaintiff filed a putative class action complaint against Newegg in this Court on August 2, 2021, alleging a single cause of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. and, in particular, its associated regulations, 47 C.F.R. § 64.1200 *et seq*. (collectively referred to herein as the "TCPA") arising out of her purported receipt of certain text messages. *See* Dkt. 1 ("Complaint" or "Compl.," ¶¶ 11, 37-38). Because Plaintiff unequivocally agreed to arbitrate her claims only on an individual basis, Newegg seeks a court order compelling Plaintiff to bring her claims in arbitration on an individual basis, and dismissing or staying this action. Newegg also seeks a stay of discovery and other scheduling deadlines while the Court considers this threshold Motion for the sake of judicial and party economy.

As discussed below, the Federal Arbitration Act ("FAA") creates a strong presumption in favor of enforcing arbitration provisions and requires courts to enforce arbitration agreements according to their terms—especially where, as here, the parties seek to achieve streamlined proceedings and expeditious results. Given this, and because the broad scope of the binding arbitration clause at issue plainly applies to Plaintiff's claim—which stems directly from her Newegg account sign-up and subsequent agreement, as an account holder, to receive text messages from Newegg— this Motion should be granted and an order should be entered dismissing or staying this action and compelling Plaintiff to submit to individual arbitration.

## II.    <u>BACKGROUND</u>

**A.    Plaintiff Voluntarily Signed Up For a Newegg Account, Enrolled In Newegg's Shuffle Program, And Elected To Receive Text Messages.**

Newegg is an online retailer that sells computer hardware and consumer electronics. *See* Declaration of Kelvin W. Jiang ("Jiang Decl."), filed herewith, at ¶ 4. Newegg sells these retail items through its website (www.newegg.com). *Id.* In order to create an account with Newegg, customers must agree to Newegg's Privacy Policy and Terms. *Id.*

Newegg also has a program called "Shuffle" where registered account holders can purchase in-demand products that are limited in supply. *Id.* at ¶ 12. Customers who enroll in this program receive Shuffle alerts notifying them of the next Shuffle event via the customer's preferred form of communication. *Id.*

In this case, Plaintiff indisputably created an account with Newegg, accepted the Terms and opted-in to receive Shuffle text message alerts, on April 21, 2021. *Id* at ¶¶ 7-8 and Exhibits ("Ex.") A-C thereto.

In order to create her Newegg account, Plaintiff navigated to Newegg's website using her smartphone, clicked on "SIGN UP" to sign up for an account, and entered certain personal information into a sign-up form, including her name, email address, password, and phone number. *See id.* at ¶ 14 & Ex. D. Then, she affirmatively clicked on the "SIGN UP" button, located immediately below a disclosure stating: "By creating an account, you agree to Newegg's

Privacy Notice and Terms of Use." *Id*. The references to the "Privacy Notice" and "Terms of
Use" in the disclosure are underlined and hyperlinked. *Id*. This disclosure is presented **above** the
"SIGN UP" button in noticeable easy-to-read font and in plain language. *See id*. Clicking on the
link labeled "Terms of Use" takes the customer directly to the Terms further described below. *Id*.
at ¶¶ 8-10 and Exs. C-D. Accordingly, pursuant to the clear and unambiguous language, Plaintiff
could not have completed her account registration without agreeing to the Terms. *Id*.

**B.    Plaintiff Agreed To Arbitrate All Disputes On An Individual Basis.**

The Newegg "Terms of Use" contains a binding arbitration clause. *See* Jiang Decl., Ex.

D. The arbitration provision broadly provides, in pertinent part:

> Except for claims for injunctive relief by either party, you and Newegg agree that
> any dispute or controversy arising out of, in relation to, or in connection with these
> Terms or your use of the Site including without limitation, any and all disputes,
> claims (whether in tort, contract, statutory or otherwise) or disagreements
> concerning the existence, breach, interpretation, application or termination of these
> Terms, shall be resolved by final and binding arbitration pursuant to the Federal
> Arbitration Act in Los Angeles, California or, at the option of the party seeking
> relief, by telephone, online, or via written submissions alone, and be administered
> by JAMS under the then current rules of JAMS (formerly known as Judicial
> Arbitration & Mediation Services) by one (1) arbitrator appointed in accordance
> with such rules and such arbitrator shall be independent and impartial. If the parties
> fail to agree on the arbitrator within twenty (20) calendar days after the initiation of
> an arbitration hereunder, JAMS shall appoint the arbitrator. The arbitration shall be
> conducted in the English language. The decision of the arbitrator will be final and
> binding on the parties. Judgment on any award(s) rendered by the arbitrator may be
> entered in any court having jurisdiction thereof. Nothing in this Section shall
> prevent either party from seeking immediate injunctive relief from any court of
> competent jurisdiction, and any such request shall not be deemed incompatible with
> the agreement to arbitrate or a waiver of the right to arbitrate. The parties undertake
> to keep confidential all awards in their arbitration, together with all confidential
> information, all materials in the proceedings created for the purpose of the
> arbitration and all other documents produced by the other party in the proceedings
> and not otherwise in the public domain, save and to the extent that disclosure may
> be required of a party by legal duty, to protect or pursue a legal right or to enforce
> or challenge an award in legal proceedings before a court or other judicial authority.
> The arbitrator shall award all fees and expenses, including reasonable attorney's
> fees, to the prevailing party. Any judgment rendered by the arbitrator may be
> entered in any court of competent jurisdiction.

*Id.,* Ex. D at 19 (emphasis added).

The first page of the Terms also states in large, bold font "**Please read these Terms carefully before using the Site. If at any time you do not agree with any of these Terms, you must immediately stop using the Site.**" *Id.*, Ex. D at 1. Customers, such as Plaintiff, also acknowledge that Newegg's Terms, including all documents referenced therein, "constitute the entire agreement between Newegg and you and supersede all prior or contemporaneous arrangements, proposals, oral or written, understandings, representations, conditions, warranties, and all other communications between Newegg and you relating to the subject matter of any contract to the fullest extent permitted by law." *Id*., Ex. D at 20.

Importantly for present purposes, the Terms contain ***two*** equally-conspicuous class action waiver clauses (the first one at the beginning of the Terms and the second immediately below the arbitration provision), stating in capitalized font:

> ARBITRATION NOTICE: EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN THE "GOVERNING LAW AND JURISDICTION" SECTION BELOW, AND IF YOU DO NOT OPT-OUT AS SET FORTH IN THAT SAME SECTION, YOU AGREE THAT DISPUTES BETWEEN YOU AND NEWEGG WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, AND YOU WAIVE YOUR RIGHT TO BRING OR RESOLVE ANY DISPUTE AS, OR PARTICIPATE IN, A CLASS, CONSOLIDATED, REPRESENTATIVE, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL ACTION OR ARBITRATION.

*Id.,* Ex. D at page 1.

The second class action waiver states in capitalized font:

> "ANY DISPUTE RESOLUTION PROCEEDING ARISING OUT OF OR RELATED TO THESE TERMS OR THE SALES TRANSACTIONS BETWEEN YOU AND NEWEGG, WHETHER IN ARBITRATION OR OTHERWISE, SHALL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION, AND YOU AND NEWEGG EXPRESSLY AGREE THAT CLASS ACTION AND REPRESENTATIVE ACTION PROCEDURES SHALL NOT BE ASSERTED IN NOR APPLY TO ANY ARBITRATION PURSUANT TO THESE TERMS."

*Id.,* Ex. D at page 19.

The Terms provide, *inter alia*, that the arbitration is to be governed by the Federal

Arbitration Act and conducted "under the then current rules of JAMS." *Id.,* Ex. D at 19. Moreover, Plaintiff had the right to "opt-out" of the arbitration and class action waiver provisions in writing within 30 days of signing up, but Plaintiff never opted out. *Id.* at ¶ 16 & Ex. D at 19.

**C.    Plaintiff Violated Her Agreement To Arbitrate "Any Dispute" On An Individual Basis By Filing This Action.**

Despite unequivocally agreeing to arbitrate "any dispute or controversy" with Newegg, as discussed above, Plaintiff now asks this Court to rule on her putative class action claims under the TCPA, as set forth in her Complaint filed on August 2, 2021. And despite clearly waiving this right, Plaintiff also seeks to represent a nationwide class of similarly situated persons. *See* Compl., ¶ 19. Plaintiff's actions are in direct violation of her agreement with Newegg.

## III.    ARGUMENT

Under the FAA, Plaintiff should be compelled to arbitrate her claims against Newegg on an individual basis.[1] Plaintiff has agreed to the Terms containing ***mandatory*** arbitration and waived her right to participate in a class action. Accordingly, as discussed below, individual arbitration of this dispute should be compelled for at least two independent reasons: (1) the arbitrator, and not the Court, should determine arbitrability; and (2) even if the Court reaches the question of arbitrability, it must still compel individual arbitration.

---

[1] This Motion addresses only the parties' agreement to arbitrate because the Court's role in ruling on a petition to compel arbitration does not include consideration of the underlying merits. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004). Nevertheless, the Complaint lacks merit for several reasons, which Newegg will present to the arbitrator, and this Motion satisfies Newegg's immediate obligation to respond to the Complaint. *See Lamkin v. Morinda Props. Weight Parcel, LLC,* 440 F.App'x 604, 607 (10th Cir. 2011) (citation omitted); *see also Marchand v. Northrop Grumman Corp.,* 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) (finding time to file answer had not elapsed in light of defendant's motion to compel arbitration); *JS Barkats, PLLC v. BE, Inc.,* 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions."). Should the Court not compel arbitration, however, Newegg reserves the right to file a substantive motion to dismiss or another responsive pleading at a later date in accordance with any schedule set by the Court. *See, e.g., Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that subsequent motion to dismiss was permissible); *Conrad v. Phone Dirs. Co.,* 583 F.3d 1376, 1382 n.2 (10th Cir. 2009) (a party may file a Rule 12 motion to dismiss complaint following denial of motion to compel arbitration).

A.    **Any Dispute Regarding the Enforceability and Scope of the At-Issue Arbitration Agreements is Delegated to the Arbitrator.**

Authority to determine whether the parties entered into a valid arbitration agreement and the scope of that agreement is committed to the arbitrator, not the Court. Federal law permits parties to arbitrate the two threshold questions of arbitrability, namely whether the arbitration agreement is valid and whether its scope covers the claims at issue. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding that "[p]arties can agree to arbitrate 'gateway' questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and that a federal court must enforce parties' "agreement to arbitrate threshold issues"). Importantly, "unless [a plaintiff] challenge[s] [a] delegation provision specifically, [a court] must treat it as valid … and must enforce it … , leaving any challenge to the validity of the [agreement to arbitrate] as a whole for the arbitrator." *Id.* at 72.[2] Thus, if the at-issue contract "clear[ly] and unmistakab[ly]" delegates this question to the arbitrator, *id*. at 79, "a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019).

Moreover, an arbitration clause that delegates validity issues to the arbitrator is considered effective when it is: (1) clear and unmistakable; and (2) not revocable under state law doctrines such as fraud, duress, or unconscionability. *See Tiri v. Lucky Chances, Inc*., 226 Cal. App. 4th 231, 242 (2014); *Rent-A-Center*, 561 U.S. at 70 n.1. The Supreme Court has held that a delegation clause is clear and unmistakable where, as here, it "explicitly assigns [the issue of arbitrability] to the arbitrator." *Rent-A-Center,* 561 U.S. at 65; *see also New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (where parties "clearly and unmistakably" delegate arbitrability, "courts will be divested of that authority" and an arbitrator

---

[2] Also under *Rent-A-Center*, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate" because "'[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" *Id.* at 71-72 (quoting *Buckeye Check Cashing, Inc. v Cardegna, et al.*, 546 U.S. 440, 445 (2006) (citing 9 U.S.C. § 2). In addition, in this instance, the Terms have a separate severability clause. *See* Jiang Decl., Ex. D at 20.

will decide in the first instance of whether a dispute is arbitrable).

The overwhelming authority in both Federal and state courts establishes that where the parties' agreement provides for arbitration in conformance with rules that specify the arbitrator will decide the scope of his or her own jurisdiction, the parties' intent is clear and unmistakable, even without a recital in the contract that the arbitrator will decide any dispute over arbitrability. *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074-1075 (9th Cir. 2013).

Here, the Terms unambiguously provide that the arbitration would be conducted pursuant to the JAMS Rules and will be administered by JAMS. Jiang Dec.*,* Ex. D at 19. The JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(b) provides that, "**Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought**, and who are proper Parties to the Arbitration, **shall be submitted to and ruled on by the Arbitrator**. <u>**The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.**</u>" JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(b) (emphasis added).

The Ninth Circuit and other courts have concluded that provisions similar to this, such as those found in the American Arbitration Association Rules and the International Chamber of Commerce Rules of Arbitration, also constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the [organizational arbitration rules like AAA and JAMS] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (internal quotations and alterations omitted)); *Fadal Machining Ctrs., LLC v. Compumachine, Inc*., 461 Fed. Appx. 630, 632 (9th Cir. 2011) (parties "clearly and unmistakably delegated the question of arbitrability to the arbitrator" by incorporating the AAA Rules); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763, 64 (3d Cir. 2016); *Wallace v. AmSurg Holdings, Inc*., No. 6:15-cv-01548, 2015 WL 7568592, at *7 (D. Or., Nov. 24, 2015) (holding that "the question of

Page 9 - Defendant Newegg Inc.'s Notice of Motion and Motion to Compel Arbitration

arbitrability is 'an issue the arbitrator where the parties "clearly and unmistakably" agreed to such"); *Poponin v. Virtual Pro, Inc*., No. C-06-4019-PJH, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006) (incorporating ICC rules constituted clear and unmistakable evidence that parties agreed to arbitrate arbitrability). Thus, the parties clearly and unmistakably agreed to delegate to the arbitrator any disputes over the arbitrability of Plaintiff's claim through their express agreement to application of the JAMS rules, which require "jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought" to be submitted "to the Arbitrator."  JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(b) (emphasis added).

Further, the arbitration provision in the Terms, and in turn the delegation clauses therein, are not procedurally or substantively unconscionable under applicable law,[3] particularly as they, *inter alia*: (1) are mutual; (2) allow consumers to opt out of arbitration; (3) provide a convenient and cost-effective forum for parties to resolve disputes; (4) give consumers the option to conduct the arbitration by phone, online or through documentary submissions; (5) are not lengthy, are stated in plain language, and are presented in an easy-to-read and noticeable font; and (6) are subject to the consumer-friendly JAMS Rules. *See generally* Jiang Decl. & Ex D thereto. *See also Willis v. Nationwide Debt Settlement Grp*., 878 F. Supp. 2d 1208, 1225 (D. Or. 2012) ("[A]n arbitration clause is not rendered substantively unconscionable because of the mere possibility that the plaintiff would have to bear a prohibitive amount of costs . . . ."); *Graf v. Match.com, LLC*, 2015 WL 4263957, at *5 (C.D. Cal. July 10, 2015) (finding that arbitration

---

[3] *See Willis v. Nationwide Debt Settlement Grp.,* 878 F. Supp. 2d 1208, 1215 (D. Or. 2012) (finding that the arbitration provision was not unconscionable, noting that "[i]n Oregon, the test for unconscionability has two components-procedural and substantive. Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract. Although both forms of unconscionability are relevant, ... only substantive unconscionability is absolutely necessary. (quoting *Sanchez v. Valencia Holding Co.*, *LLC*, 61 Cal.4th 899, 910 (2015)); *Concepcion*, 563 U.S. at 346-47 (enforcing binding arbitration provision in an alleged "adhesion" contract, noting "the times in which consumer contracts were anything other than adhesive are long past"). *See also* Jiang Decl., Ex. D at 19 (Newegg Terms, California choice of law).

provision was not substantively unconscionable where, *inter alia*, it conspicuously appeared in capitalized letters and was not overly harsh or oppressive); *Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (holding that an opportunity to opt out precludes finding of procedural unconscionability); *Mohamed v. Uber Techs, Inc.*, 836 F.3d 1110, 1111 (9th Cir. 2016) (delegation clause not procedurally unconscionable due to 30-day opt-out provision); *Carr v. Credit One Bank*, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) (arbitration clause was not substantively unconscionable where, *inter alia*, it did not foreclose plaintiff's TCPA claims and was enforceable by either party). Indeed, there is nothing in the arbitration provisions at issue here that is unreasonably favorable to Newegg (if anything, they favor Plaintiff), and Plaintiff had a meaningful opportunity to read the Terms, which were clear and conspicuous and not buried in fine print or presented in complex "legalese." Further, there was certainly no duress, as Plaintiff voluntarily signed herself up for an account via Newegg's website, using her own smartphone. *See* Jiang Decl., ¶¶ 7-8, Exs. A and B. Nevertheless, as discussed above, the parties delegated these issues to the arbitrator, and the arbitrator must be allowed to decide them.

**B.      The Arbitration Provision Must Be Enforced.**

Should the Court reach the question of arbitrability despite it having been delegated, the arbitration agreement constitutes a valid and enforceable contract mandating that this dispute be arbitrated. As the United States Supreme Court aptly noted, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal citation omitted). In this regard, Section 2 of the FAA provides that written arbitration provisions in "a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "Congress has instructed federal courts to enforce arbitration agreements according to

their terms—*including terms providing for individualized proceedings*." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1619 (2018) (emphasis added).

Moreover, the FAA strongly favors enforcement of arbitration agreements and places arbitration agreements on equal footing with all other contracts. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2009) (citing 9 U.S.C. § 2). In determining whether a particular dispute should be arbitrated, the FAA leaves "no place for the exercise of discretion." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 221 (1985) (holding that federal courts must "rigorously enforce agreements to arbitrate"). Rather, if a court finds a valid agreement to arbitrate exists and that it encompasses the dispute, the FAA *requires* the court to refer the matter to arbitration. *Id.* at 221.[4]

Additionally, the merits of the underlying dispute cannot be considered when deciding a motion to compel arbitration. *See AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649-50 (1986). Instead, a court may, at most, determine only: (1) whether a valid arbitration agreement exists, and, if so, (2) whether the arbitration agreement encompasses the dispute at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4); *see also Ware v. Golden 1 Credit Union, Inc*., 375 F. Supp. 3d 1145, 1150 (E.D. Cal. 2019) (same). If the response is affirmative on both counts, as it is in the present case, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron,* 207 F.3d at 1130. Importantly, the party challenging the arbitration clause (here, Plaintiff) "bear[s] the burden of proving that the provision is unenforceable" based on validity and scope. *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing

---

[4]Arbitration agreements must be analyzed against the backdrop of the FAA, which reflects a "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339, 344 (internal quotations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530, 533 (2012). The Supreme Court has held that Congress enacted the FAA "to reverse longstanding judicial hostility to arbitration agreements." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (internal quotation and alteration omitted).

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). Plaintiff cannot meet her burden.

### 1.    The FAA Applies To The At-Issue Arbitration Provision.

The FAA applies to the instant arbitration provision because it is a written provision in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The United States Supreme Court has interpreted the term "involving commerce" as used in the FAA to be "the functional equivalent of the more familiar 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2002) (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because defendant engaged in business of the type at issue in multiple states).[5]

Here, the Newegg agreement, and its business generally, indisputably "affect commerce" because both concern the offering and sale of consumer goods online. But, in any event, the arbitration provision in the Terms expressly and unambiguously provides:

> "[Y]ou and Newegg agree that any dispute or controversy arising out of, in relation to, or in connection with these Terms or your use of the Site including without limitation, any and all disputes, claims (whether in tort, contract, statutory or otherwise) or disagreements concerning the existence, breach, interpretation, application or termination of these Terms, shall be resolved by final and binding arbitration ***pursuant to the Federal Arbitration Act***…"

Jiang Decl., Ex. D at 19 (emphasis added).

Given the foregoing provision, the parties' clear and unequivocal agreements to apply the FAA in this case must be enforced. *See Am. Express Co. v. Italian Colors Rest*., 570 U.S. 228, 233 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms,

---

[5] The FAA is extremely broad and applies to any transaction ***directly or indirectly*** affecting interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). Thus, the phrase "involving commerce" is interpreted broadly. *See, e.g.*, *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56-57 (2002) (finding FAA applied where individual transaction did not have "any specific effect upon interstate commerce" because defendant engaged in business at issue in multiple states).

including terms that 'specify with whom [the parties] choose to arbitrate their disputes, and 'the

rules under which that arbitration will be conducted'") (internal citation and emphasis omitted).

###  2.    The Arbitration Agreement Is Valid And Binding Upon Plaintiff.

Newegg, as the party seeking to compel arbitration, bears the burden of proving "the

existence of an agreement to arbitrate" only "by a preponderance of the evidence." *Campos v.*

*Bluestern Brands, Inc.*, 2016 WL 297429, at *6 (D. Or. Jan. 22, 2016) (citing *Knutson v. Sirius*

*XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). However, once the moving party establishes

the existence of an arbitration agreement, the burden shifts to the opposing party to establish the

factual basis for a defense to enforcement. *Knutson*, 771 F.3d at 565. Again, Plaintiff cannot

meet her burden here.

When deciding whether a valid arbitration agreement exists, courts generally apply

"ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc.*

*v. Kaplan,* 514 U.S. 938, 944 (1995). Further, "[w]hile new commerce on the Internet has

exposed courts to many new situations, it has not fundamentally changed the principles of

contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under Oregon

law, contract formation requires "mutual assent to the exchange, which may be expressed

through words or inferred from the actions of the parties." *Homestyle Direct, LLC v. DHS,* 354

Or 253, 262, 311 (2013); *see also Ken Hood Const. Co. v. Pac. Coast Const., Inc.*, 201 Or. App.

568, 577 (2005) ("Mutual assent may be inferred from the conduct of the parties."); *Restatement*

*(Second) of Contracts* § 17(1) (1981).  The law is the same in California, which the Terms

provide as the applicable law here. Jiang Decl., Ex. D at 19; *see Knutson v. Sirius XM Radio Inc.*,

771 F.3d 559, 565 (9th Cir. 2014) ("[U]nder California law, mutual assent is a required element

of contract formation."). "Mutual assent may be manifested by written or spoken words, or by

conduct and acceptance of contract terms may be implied through action or inaction." *Id.*

(internal citations and quotation marks omitted).

Internet agreements, such as Newegg's Terms described above, are valid and enforceable

where, as here: (1) "the user is required to affirmatively acknowledge the agreement before

proceeding with use of the website," or (2) "the website puts a reasonably prudent user on inquiry notice of the terms of the contract," which "depends on the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1176-77. Thus, under Oregon and California law, absent special circumstances, a party is bound by the terms of a contract even though "he is unaware of those terms because he has failed to read [the contract]." *Knappenberger v. Cascade Ins. Co.* 259 Or. 396, 398 (1971); *see also Paxton v. Macy's W. Stores, Inc.,* 2018 WL 4297763, at *7 (E.D. Cal. Sept. 7, 2018) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.") (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("[C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant.").

In this case, the operative agreement—*i.e.,* the Terms—includes a mandatory arbitration provision, as well as a class action waiver clause that appears conspicuously in capitalized font. *See* Jiang Decl., Ex. D at 1, 19. Plaintiff agreed to the Terms by affirmatively clicking the "SIGN UP" button on the account sign-up page, which was placed below a conspicuous disclosure containing hyperlinked (underlined) Terms, thus signifying her assent. *Id.* at ¶¶ 8-10 & Exs. A, D. Plaintiff not only had the opportunity to read the hyperlinked Terms before agreeing to them, but she also had the right to opt-out in writing of the arbitration provision in the Terms within 30 days of sign-up, yet she did not exercise that right. *Id.* at ¶¶ 11, 16. Thus, Plaintiff agreed to be bound by the Terms, including the arbitration provision and class waivers therein. *See Knappenberger,* 259 Or. at 398; *see also Paxton,* 2018 WL 4297763 at *7; *Fteja*, 841 F. Supp. 2d at 839.

Moreover, Plaintiff's agreement to arbitrate is further established by her failure to opt-out of the arbitration clause. *See Hilburn v. Encore Receivable Mgmt., Inc.*, No. 06-6096-HO, 2007 WL 8650773, at *2 (D. Or., July 11, 2007) (holding that plaintiff agreed to arbitration provision

by failing to opt out and continuing to use credit card). As expressly provided in the Terms, Plaintiff simply needed to notify Newegg in writing of her decision to opt-out of the arbitration agreement within 30 days. Plaintiff did not so. *See* Jiang Dec. ¶ 16. Plaintiff's failure to exercise her opt-out right further confirms her assent to the arbitration provision.

### 3.    Plaintiff's TCPA Claim Falls Squarely Within The Scope Of The Arbitration Provision.

"A broad arbitration provision reaches ***every dispute*** between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Willamette Biomass Processors, Inc. v. Perdue Agribusiness LLC*, WL 2535047, at *3 (D. Or. Apr. 13, 2020) (internal quotations and citation omitted, emphasis added). Put another way, agreements to arbitrate "[a]ny dispute, controversy or claim," like Newegg's, are "broad and far reaching," *Chiron*, 207 F.3d at 1131, and require arbitration of all disputes that "touch matters covered by the contract containing the arbitration clause," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

The arbitration provision at issue broadly encompasses (among other things) "any dispute or controversy" between Plaintiff and Newegg "arising out of, in relation to, or in connection with these Terms or [Plaintiff's] use of the Site including without limitation, any and all disputes, claims (whether in tort, contract, statutory or otherwise) or disagreements concerning the existence, breach, interpretation, application or termination of these Terms."[6] Jiang Decl., Ex. D at 19. Plaintiff's claims fit squarely into these provisions.

In this regard, Plaintiff alleges that Newegg sent her "marketing texts even after repeated

---

[6] While the arbitration provision excepts "claims for injunctive relief" from mandatory arbitration, it does so to permit a party to seek "immediate injunctive relief" in court. *See* Jiang Decl., Ex. D at 19 ("***Except for claims for injunctive relief by either party***, you and Newegg agree that ***any dispute or controversy*** arising out of or in relation to or in connection with these Terms. . . . . ***shall*** be resolved by final and binding arbitration . . .") (emphases added). However, the Terms do not entirely exclude "claims for injunctive relief" from arbitration. *Id.* at19 ("Nothing in this Section shall prevent either party from seeking immediate injunctive relief from any court of competent jurisdiction, and any such request shall not  be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate."). Moreover, to the extent Plaintiff even seeks injunctive relief, she does so solely in her prayer for relief and not as a standalone claim. *See* Compl. at 14 para. (c) (Prayer for Relief).

requests by [her] for the messages to stop" in violation of the TCPA. *See* Compl., ¶¶ 11, 37-38.
Statutory claims, such as the TCPA claims at issue here, are routinely found to be subject to
arbitration clauses in similar agreements. *See, e.g., Koyoc v. Progress Fin. Co.*, 2014 WL
1878903, at *6 (C.D. Cal. May 9, 2014) ("[T]he determination of Plaintiff's TCPA claim arises
directly from and relates to his loan from Defendant and necessarily requires interpretation of the
Loan Agreement and related Consent Agreement"); *Brown v. DIRECTTV, LLC*, 2013 WL
3273811, at *4-6 (C.D. Cal. June 26, 2013) (arbitration provision that applied to "any legal or
equitable claim relating to [the] Agreement" included TCPA claims); *McNamara v. Royal Bank
of Scotland Grp., PLC*, 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012) (arbitration provision
limited to "any claim, dispute or controversy of any nature ... under or related to any Account
[Plaintiff has] with the Bank" included TCPA claims based on at-issue calls relating to
defendant's rewards program). This conclusion is bolstered by the Supreme Court's well-
accepted, long-standing holding that "any doubts concerning the scope of arbitrable issues
should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp.*, 460 U.S. 1, 24-25 (1983); *see also Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530,
533 (2012) (the FAA "reflects an emphatic federal policy in favor of arbitral dispute
resolution"). Thus, Plaintiff's TCPA claim falls squarely within the scope of the arbitration
provisions in the at-issue agreements in this case.

Additionally, the arbitration provision in the Terms is very broad. *See Willamette Crest
Gaming, LLC v. Play N Trade Franchise, Inc.*, Civil No. 09-461-ST, 2009 WL 2243811, at *3
(D. Or. July 27, 2009) (characterizing arbitration clause covering "any dispute . . . arising out of
or relating to this Agreement" as "very broad"); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207
F.3d 1126, 1131 (9th Cir. 2000) (holding that arbitration clause covering "[a]ny dispute,
controversy or claim arising out of or relating to" the parties' agreement is "broad and far
reaching"). Plaintiff agreed to arbitrate "any dispute or controversy arising out of, in relation to,
or in connection with these Terms or your use of the Site including without limitation, any and
all disputes, claims (whether in tort, contract, statutory or otherwise) or disagreements

concerning the existence, breach, interpretation, application or termination of these Terms." Jiang Dec*.,* Ex. D at 19.

Thus, Plaintiff's claims arise directly from the Terms and are based on her *statutory* TCPA claim in relation to her use of Newegg's website and her Newegg account. Plaintiff's claims fall within the broad scope of the arbitration provision in the Terms.

**C.     The Arbitration Should Proceed On An Individual Basis.**

As discussed above, the Terms, to which Plaintiff agreed, contain an explicit class action waiver. *See* Jiang Decl. ¶ 10, Ex. D at 1, 19. The Ninth Circuit has held that class waivers in arbitration provisions are enforceable. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225-26 (9th Cir. 2012) ("Importantly, the FAA meant what the [Supreme] Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable....." (citing *Concepcion*, 563 U.S. at 1748)). Accordingly, ***individual*** arbitration should be compelled here, because, in agreeing to the Terms, Plaintiff expressly waived her right to bring her claims on a class basis.

**D.     This Action Should be Dismissed in Favor of Arbitration.**

Dismissal is proper where "all of plaintiff's claims are subject to arbitration and there is nothing left before [the] Court to [do] except to execute judgment, dismissal is more appropriate than a stay." *Blashishin v. Keystone Auto. Indus., Inc.,* 2021 WL 3503774, at *2 (D. Or. July 22, 2021) (internal quotations and citation omitted, emphasis added); *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar Sci. & Tech. Co*., 690 F.App'x 942 (9th Cir. 2017) (dismissing action where each cause of action arose from conduct governed by arbitration agreement, citing *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 637-38 (9th Cir. 1988)). Plaintiff's sole cause of action is for an alleged violation of the TCPA. (Compl., ¶¶ 11, 37-38.) The at-issue arbitration agreement clearly encompasses (and therefore bars) Plaintiff's single claim in the Complaint. *See* Section III.B.3. Accordingly, following arbitration, there will be nothing left for the Court to resolve. *See Gates v. Veravest Invs., Inc.*, 2004 U.S. Dist. LEXIS 10104, at *30 (D. Or. May 25, 2004)

(recommending dismissal of case where nothing will remain for the court to resolve after arbitration).

Additionally, the "provision for stay in 9 U.S.C. section 3" does not prevent a court from acting in its discretion to dismiss all claims entirely. *Sparling*, 864 F.2d at 637-38 (dismissing where "plaintiffs could not possibly win relief" because all claims were subject to arbitration and section 3 of the FAA does "not limit the court's authority to grant a dismissal"). Such is true here. Consequently, this action should be dismissed in favor of arbitration. Should the Court not be inclined to dismiss, Newegg respectfully requests in the alternative that this matter be stayed until completion of the arbitration, in accordance with Section 3 of the FAA.

**E.    All Case Deadlines Pending Ruling on This Threshold Motion Should Be Stayed.**

Federal courts in the Ninth Circuit and elsewhere routinely stay discovery and other scheduling deadlines in cases where, as here, there is a motion to compel arbitration pending. *See, e.g., Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (under the FAA, discovery is permitted *only* regarding "issues related to the making and performance of the agreement to arbitrate."); *Stiener v. Apple Computer, Inc.,* 2007 WL 4219388, at *2 (N.D. Cal. Nov. 29, 2007) (granting motion to stay case management deadlines under the court's scheduling order pending resolution of defendant's motion to compel arbitration because, if the motion is granted, the case will proceed to arbitration and "responsibility for the conduct of discovery [will] lie[] with the arbitrators"…) (collecting cases); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 2001 WL 812224, at *7 (S.D.N.Y.2001) ("As is the general practice of district courts, a stay of discovery was imposed in this case while the motion to compel arbitration was pending before the Court."). Such stays further judicial and party economy. Because the Court's threshold ruling on this Motion may dispose of the action entirely, a stay of all discovery and other case management deadlines during the pendency of this Motion would avoid unnecessary time, expense, and effort by the parties and the Court in the event this Motion is granted. Accordingly, such a stay is appropriate.

## IV.    CONCLUSION

For all the foregoing reasons, and such additional reasons as may be presented, Newegg respectfully requests the Court enter an order: (i) compelling Plaintiff to arbitrate her claims in this case on an individual basis, (ii) dismissing this action in its entirety, or alternatively staying this action, in favor of arbitration, and (iii) granting all other relief the Court deems just and proper, including staying all discovery and other scheduling deadlines during the pendency of this Motion.

Dated: October 7, 2021.                                  Respectfully submitted,


                                                  *s/ Eric R. Mills*
                                                  Seth H. Row, OSB No. 021845
                                                  seth.row@millernash.com
                                                  Eric R. Mills, OSB No. 194224
                                                  eric.mills@millernash.com
                                                  Phone: 503.224.5858
                                                  Fax: 503.224.0155

                                                  and

                                                  John W. McGuinness, CA Bar No. 277322
                                                  (*Admitted Pro Hac Vice*)
                                                  jmcguinness@manatt.com
                                                  Telephone:  310.312.4270
                                                  Facsimile:  310.996.7030

                                                  Attorneys for Defendant Newegg Inc.